## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                                    **CRIMINAL DOCKET**

**VERSUS**                                                                **No. 10-154**

**GREGORY MCRAE**                                                    **SECTION I**


## ORDER AND REASONS

Before the Court is a motion[1] for a new trial based on newly discovered evidence filed by defendant, Gregory McRae ("McRae"), as well as an amended motion[2] for a new trial filed by McRae. The government opposes[3] the motions. For the following reasons, the motions are **DENIED**.

## BACKGROUND

The Court assumes familiarity with the factual and procedural background of the case and only briefly revisits certain facts.[4]

McRae was charged in five counts of an eleven-count second superseding indictment.[5]

Count 3 charged that McRae and Dwayne Scheuermann ("Scheuermann"), while acting under color of law as police officers with the New Orleans Police Department ("NOPD"), and while aiding and abetting one another, kicked and hit Edward King ("King") and William Tanner

---

[1] R. Doc. No. 927; *see also* R. Doc. No. 984.
[2] R. Doc. No. 1026.
[3] R. Doc. No. 969; R. Doc. No. 1033.
[4] *See United States v. McRae*, 702 F.3d 806 (5th Cir. 2012).
[5] R. Doc. No. 223.

("Tanner") without legal justification, willfully depriving them of the right to be free from the use of unreasonable force by law enforcement officers, and resulting in bodily injury to King and Tanner, all in violation of 18 U.S.C. §§ 242 and 2.[6]

Count 4 charged that McRae and Scheuermann, while acting under color of law as NOPD officers, and while aiding and abetting one another, unreasonably seized Tanner's vehicle, a 2001 Chevrolet Malibu ("Malibu"), by burning it without legal justification, willfully depriving Tanner of the right to be free from an unreasonable seizure by law enforcement officers, and using fire and a dangerous weapon during this offense, all in violation of 18 U.S.C. §§ 242 and 2.[7]

Count 5 charged that McRae and Scheuermann, while acting under color of law as NOPD officers, and while aiding and abetting one another, burned the body of Henry Glover ("Glover"), which was inside the Malibu, without legal justification, thereby willfully depriving Glover's descendants and survivors of the rights to have access to courts and to seek legal redress for a harm, and using fire and a dangerous weapon during this offense, all in violation of 18 U.S.C. §§ 242 and 2.[8]

Count 6 charged that McRae and Scheuermann, in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), aided and abetted one another in knowingly destroying evidence, by burning the Malibu, which contained Glover's body and other evidence, with the intent to impede, obstruct, and influence the investigation of

---

[6] R. Doc. No. 223, at 2-3.
[7] R. Doc. No. 223, at 3.
[8] R. Doc. No. 223, at 3.

the shooting of Glover by an NOPD officer, all in violation of 18 U.S.C. §§ 1519 and 2.[9]

Count 7 charged that McRae and Scheuermann, while aiding and abetting one another, knowingly used fire to commit violations of 18 U.S.C. §§ 242 and 1519, as charged in counts 4, 5, and 6 of the second superseding indictment, all in violation of 18 U.S.C. §§ 844(h) and 2.[10]

The jury acquitted McRae of Count 3, which charged him with the unlawful use of force against Tanner and King, but convicted him of the other four counts.[11] The jury acquitted Scheuermann of all counts.[12]

As to Count 5, the U.S. Court of Appeals for the Fifth Circuit reversed and vacated McRae's conviction for denying Glover's descendants and survivors the right of access to courts, concluding that there was insufficient evidence to support this conviction. *McRae*, 702 F.3d at 811. The Fifth Circuit affirmed McRae's other convictions and remanded for resentencing. *Id.*

On December 5, 2013, McRae filed a motion[13] for a new trial based on newly discovered evidence, namely: (1) online posts by individuals including former Assistant U.S. Attorney ("AUSA") Sal Perricone ("Perricone"), (2) leaks of grand jury information, (3) a government cover-up of such posts and leaks, and (4) evidence of McRae's mental condition, including a diagnosis of post-traumatic stress disorder ("PTSD").[14] On May 6, 2014, McRae filed an amended motion, urging additional arguments relative to online commenting and grand jury leaks.[15] Both motions are premised on the assertion that newly discovered evidence entitles

---

[9] R. Doc. No. 223, at 4.
[10] R. Doc. No. 223, at 4.
[11] R. Doc. No. 427-4, at 3-7.
[12] R. Doc. No. 427-4, at 3-7.
[13] R. Doc. No. 927.
[14] R. Doc. No. 927-1, at 6, 28.
[15] R. Doc. No. 1026-3.

McRae to a new trial.

## LAW AND ANALYSIS

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion based on newly discovered evidence must be filed within 3 years after the verdict. Fed. R. Crim. P. 33(b). Motions for a new trial based upon newly discovered evidence are "disfavored and reviewed with great caution." *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004) (quotation omitted).

Generally, there are five prerequisites that must be met to justify a new trial based upon newly discovered evidence. *Id*. The defendant must prove that:

(1) the evidence is newly discovered and was unknown to the defendant at the time of trial;

(2) the failure to detect the evidence was not due to a lack of diligence by the defendant;

(3) the evidence is not merely cumulative or impeaching;

(4) the evidence is material; and

(5) the evidence if introduced at a new trial would probably produce an acquittal.

*Id*.[16] In the absence of any one of these elements, the motion fails. *Id*.

---

[16] "[I]f the government used false testimony that it knew or should have known was false, then the standard applied for newly discovered evidence is slightly more lenient," requiring a new trial if there is "*any reasonable likelihood* that the false testimony affected the judgment of the jury." *Wall*, 389 F.3d at 473. Although no one contends that this standard applies to the present case, the Court notes that, when taken as a whole, the evidence identified by McRae fails to satisfy even the "any reasonable likelihood" standard.

I.    **Online Posts, Grand Jury Leaks, and Cover-Up**

McRae argues that then-AUSA Perricone[17] deliberately attempted to influence public opinion by posting critical anonymous online comments below and in response to online news articles about the New Orleans Police Department ("NOPD") and McRae.[18] He additionally alleges that grand jury "leaks," in violation of Rule 6 of the Federal Rules of Criminal Procedure, are evidenced by pretrial media coverage.[19] The following is a non-exhaustive representative summary of the facts alleged by McRae

In the months leading up to McRae's trial, "Perricone went to work to sway public opinion by sullying [NOPD] from top to bottom."[20] In comments responsive to certain online articles, Perricone referred to NOPD as corrupt, ineffectual, and totally dysfunctional.[21]

As the trial approached, Perricone's online comments addressed the above-captioned matter more directly. On October 24, 2010, he commented on an article about Scheuermann's "history of abuse allegations," stating: "Mr. Scheuermann['s] behavior was admired by the NOPD and therefore tolerated. . . . If the Justice Department is serious, it will take whatever steps they have to rectify this problem – Now!!!"[22] On November 7, 2010, the day before jury selection, he posted a comment referring to NOPD officers as "a group of frustrated, numbed insensitive mutants with guns and badges."[23]

_____

[17] Perricone was not a part of the government's trial team in this case, "nor an actual supervisor of the team." R. Doc. No. 969, at 10 n.5. *Cf. United States v. Coast of Me. Lobster Co.*, 538 F.2d 899, 902 (1st Cir. 1975) (confining its ruling).
[18] R. Doc. No. 927-1, at 8.
[19] R. Doc. No. 927-1, at 14-15.
[20] R. Doc. No. 927-1, at 8.
[21] R. Doc. No. 927-1, at 8 & n.9.
[22] R. Doc. No. 927-1, at 9.
[23] R. Doc. No. 927-1, at 9 & n.14.

On November 19, 2010, as trial was ongoing, Perricone posted an especially direct comment on the case:

> Let me see if I understand this: The cops, through[] their attorneys, admitted that they shot Glover and then burned the body in a car that belonged to another man, who was not arrested for anything…RIGHT???
> GUILTY!!
> Now, let's get on to Danzi[g]er.[24]

On November 23, 2013, Perricone posted a comment criticizing AUSA Michael Magner's ("Magner") cross-examination of Warren.[25] Perricone asserted that the jury would "see through" what he perceived as "theatrical exhibits" and "punish this silliness."[26]

Around November 26, 2010, Magner began to suspect that a current or former AUSA was responsible for some of the online comments.[27] Several days after the jury entered its verdict against McRae,[28] another AUSA suggested to Magner that the commenter might be Perricone.[29]

McRae also alleges that newspaper articles indicate that grand jury leaks by the government relative to the above-captioned matter began in June 2009[30] and continued up until the indictment was filed and unsealed on June 10, 2010.[31]

McRae argues that Perricone's comments "violated multiple rules and regulations designed to protect the right to a fair trial,"[32] but the question before the Court is solely whether such comments, in conjunction with the other evidence addressed herein, entitle McRae to a new

---

[24] R. Doc. No. 927-1, at 6.
[25] R. Doc. No. 927-13, at 10.
[26] R. Doc. No. 927-13, at 10.
[27] R. Doc. No. 1026-3, at 3.
[28] R. Doc. No. 427.
[29] R. Doc. No. 1026-3, at 3.
[30] *See* R. Doc. No. 927-1, at 15 & nn.32-33.
[31] R. Doc. No. 927, at 16; R. Doc. No. 1; R. Doc. No. 6.
[32] R. Doc. No. 927-1, at 7.

trial pursuant to Rule 33. The Court concludes that the evidence relative to online posts, grand jury leaks, and a government cover-up fails to meet the fourth and fifth prongs of the Rule 33 analysis.[33]

"Rule 33 caselaw cannot be understood except through the lens of avoiding the injustice of a compromised verdict," rather than "punish[ing] contemptuous prosecutors." *United States v. Poole*, 735 F.3d 269, 279 (5th Cir. 2013). "A new trial is a remedy inapposite to the harm where the putative 'wrong' has no effect on our confidence in the verdict or the fairness of the trial." *Id.* at 279 n.24. "Even in cases of egregious prosecutorial misconduct," the Supreme Court has "required a new trial only when the tainted evidence was material to the case." *Smith v. Phillips*, 455 U.S. 209, 220 n.10 (1982); *see also United States v. Snoddy*, 862 F.2d 1154, 1156 (5th Cir. 1989).

With respect to materiality, the Fifth Circuit has suggested that the relevant inquiry is whether "a jury could properly consider [the evidence] in determining guilt or innocence in a new trial." *United States v. Piazza*, 647 F.3d 559, 569 (5th Cir. 2011). Pursuant to Rule 33's prejudice requirement, the relevant question is whether the evidence "would probably produce a different verdict in the event of re-trial." *Snoddy*, 862 F.2d at 1156 (quoting *United States v. Kahn*, 472 F.2d 272, 287 (2d Cir.1973)).

The evidence relative to online commenting, grand jury leaks, and a government cover-up does not fit neatly into this framework because such matters are patently immaterial to the presentation of admissible evidence and the jury's consideration thereof. Accordingly, the Court easily finds that this evidence would not probably result in a different verdict. Newly discovered

---

[33] In light of the Court's holding relative to materiality and prejudice, the Court need not determine whether such evidence meets Rule 33's other requirements.

evidence, however, "need not relate only to the question of innocence but may be probative of another issue of law." *See United States v. Beasley*, 582 F.2d 337, 339 (5th Cir. 1978) (adopting opinion of Rubin, J.).

Newly discovered evidence relative to the "fairness or impartiality of a jury[] may be grounds for a new trial." *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc) (citing *United States v. Williams*, 613 F.2d 573, 575 (5th Cir. 1980), and *Beasley*, 582 F.2d at 339). In such cases, courts inquire "'whether reasonable grounds'" exist to "'question the fairness of the trial or the integrity of the verdict.'" *Williams*, 613 F.2d at 575 (quoting *S. Pac. Co. v. Francois*, 411 F.2d 778, 780 (5th Cir. 1969)).

McRae's motion for a new trial essentially argues that newly discovered evidence of online commenting and grand jury leaks supports the conclusion that the jury was not impartial.[34] However, the fact that jurors were potentially exposed to incrementally more media coverage or online comments as a result of certain actions by the government[35] does not give rise to "reasonable grounds . . . to question the fairness of the trial or the integrity of the verdict." *Id.* The parties were well aware of the ongoing media exposure[36] when they proceeded with the lengthy questionnaire and voir dire process by which an impartial jury was empaneled.[37] The jury was expressly and repeatedly instructed to base its verdict solely on the admissible evidence

---

[34] *See also* R. Doc. No. 1037.

[35] Given that Perricone used pseudonyms, his online comments did not carry the government's imprimatur. *Cf. Berger v. United States*, 295 U.S. 78, 88 (1935); *Henslee v. United States*, 246 F.2d 190, 193 (5th Cir. 1957) (applying *Berger*, 295 U.S. at 88).

[36] McRae has never suggested that he was unaware that the online news articles relative to his trial included a function by which readers could post online comments.

[37] There was no motion for a transfer of venue relative to McRae's trial. With respect to co-defendant Warren's retrial, such motions were denied. *E.g.*, *United States v. Warren*, No. 10-154, 2013 WL 1562767 (E.D. La. Apr. 12, 2013).

and to avoid any exposure to media coverage of the case.[38] "A jury is presumed to follow its instructions," *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and McRae has not come forth with any evidence to suggest that the jury did otherwise. *See also Poole*, 735 F.3d at 276.[39]

McRae contends that the alleged government misconduct "made the difficult task of picking a jury in a highly publicized case harder," but he has not shown that this additional incremental difficulty impaired the fairness of the trial, that it undermined the integrity of the jury's verdict, or that the absence of the alleged misconduct would probably result in a different verdict. Accordingly, the alleged government misconduct does not warrant relief pursuant to Rule 33.

The Court further finds that no evidentiary hearing is necessary with respect to this evidence. McRae requests such a hearing to address "(a) who knew about the blogging and why they remained silent and (b) who were the reporters' sources for the Glover case-related newspaper articles."[40] The Court need not decide at this juncture who knew what about whom at the U.S. Attorney's Office.[41] The Court's sole concern is for the fairness of McRae's trial and the integrity of the jury's verdict. *See Orena v. United States*, 956 F. Supp. 1071, 1076, 1112 (E.D.N.Y. 1997) (denying a motion for a new trial that attempted "to transform a troubling cloud of questionable ethics and judgment enveloping an F.B.I. Special Agent into a raging storm of reasonable doubt"). The matters on which McRae seeks an evidentiary hearing do not bear on the

---

[38] *E.g.*, R. Doc. No. 564, at 925.

[39] Two of the jurors on whom McRae focuses were alternates. *See* R. Doc. No. 927-1, at 254; *see also* R. Doc. No. 563, at 233; R. Doc. No. 579, at 7-8.

[40] R. Doc. No. 927-1, at 30-31.

[41] To the extent that misconduct occurred, there are other remedies available that "allow the court to focus on the culpable individual rather than granting a windfall to the unprejudiced defendant." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).

Court's determination of materiality and prejudice. Accordingly, the request for an evidentiary hearing relative to online commenting and alleged grand jury leaks is **DENIED**.

## II.   **McRae's Mental Condition**

McRae saw Dr. William B. Janzen, a psychologist, weekly "from September 2010 through November 2010 and resumed sessions post trial verdict in mid-December 2010."[42] McRae contends that Dr. Janzen's records, including a September 2010 report and a February 2011 report, constitute newly discovered evidence that merits a new trial.[43]

The September 2010 report reflected that McRae suffered from "a high level of anxiety and moderate but chronic depression," as well as "considerable emotional distress which he is having a difficult time coping with."[44] The February 2011 report indicated that McRae "is clearly evidencing symptoms of a posttraumatic stress disorder as a result of his experiences during and after Katrina" and that "he is coping with depression and anxiety regarding his recent conviction."[45] McRae describes his trial counsel's "failure to seek access to Dr. Janzen's report and session notes" as "inexplicable."[46]

McRae argues that his state of mind "could not be properly determined" by the jury "without Dr. Janzen's report."[47] McRae contends, "Nothing in McRae's background would

[42] R. Doc. No. 927-30, at 2; R. Doc. No. 927-32, at 1.
[43] R. Doc. No. 927-1, at 2, 30-31.
[44] R. Doc. No. 927-32, at 43; *see also* R. Doc. No. 927-32, at 41 (noting "considerable anguish").
[45] R. Doc. No. 927-32, at 1.
[46] R. Doc. No. 927-1, at 4. Insofar as McRae's motion could be read to include an ineffective assistance of counsel claim, his motion for a new trial is an "improper vehicle" for such a claim. *See United States v. Medina*, 118 F.3d 371, 372 (5th Cir. 1997); *United States v. Ugalde*, 861 F.2d 802, 809-10 (5th Cir. 1988).
[47] R. Doc. No. 927-1, at 3. In making this argument, McRae attempts to shoehorn in various other arguments relative to severance. *See, e.g.*, R. Doc. No. 927-1, at 26; *see also McRae*, 702

explain his conduct on September 2, 2014 when he burned Glover's body. But Dr. Janzen's psychological report and session notes [] go a long way to provide a credible and highly relevant insight into McRae's irrational, but non-criminal conduct: McRae was likely at the time suffering from Post-Traumatic Stress Disorder."[48]

The Court disagrees that these records are newly discovered evidence that could not have been discovered through the exercise of due diligence. As highlighted by the government, McRae concedes that his counsel knew that McRae "was undergoing psychological examination" but did not obtain any related documents.[49]

"Several cases suggest that diagnoses made available only after trial could in some circumstances form a basis for a new trial, even where the symptoms were known or knowable during trial." *United States v. Herrera*, 481 F.3d 1266, 1271 (10th Cir. 2007). For example, McRae relies on *United States v. Massa*, 804 F.2d 1020 (8th Cir. 1986), in which the court concluded that a psychiatrist's affidavit, which was prepared after trial, was newly discovered evidence. *See id.* at 1022 ("Although the factual details underlying Holeman's affidavit were known to Massa prior to trial, he did not know that an expert would opine that those details of his life had so affected his mental state as to render him incapable of committing the crimes with which he was charged."). Such cases are distinguishable because information relative to McRae's mental condition, including his diagnosis, was available before and during trial.[50] Indeed, as

---

F.3d at 824-25 ("Warren contends that he suffered specific and compelling prejudice from the ton of horrible evidence the government used to convict McRae, and that little of it was relevant to the indictment against him."). Such arguments are not premised on newly discovered evidence.

[48] R. Doc. No. 927-1, at 28.
[49] R. Doc. No. 969, at 17.
[50] *See, e.g.*, R. Doc. No. 927-32, at 38 (noting, in document dated September 23, 2010, that

11

discussed below, trial counsel overtly employed a defense premised on McRae's mental condition. Accordingly, even if some of the information in Dr. Jansen's notes is newly discovered, the Court concludes that this evidence could have been discovered through the exercise of due diligence.[51] *See Herrera*, 481 F.3d at 1271; *Wall*, 389 F.3d at 469.

Moreover, the Court concludes that the evidence would not probably produce an acquittal because the jury's rejection of McRae's *mens rea* defense was amply supported by the evidence presented at trial and the jury's credibility determinations.

McRae's trial counsel deliberately elicited testimony showing that McRae's "psyche" had gone through a "gradual deterioration" by the time he burned the body.[52] McRae acknowledges that he testified, "quite emotionally," as to the conditions he experienced during and after Katrina.[53] McRae testified that he burned Glover's body so that it would not rot, taking into account that he had broken down because of, among other things, the sheer number of corpses he encountered after Hurricane Katrina.[54]

Scheuermann also testified that it was "obvious" that McRae had "serious issues with the storm," and that McRae "looked exhausted" and "like he was just having problems."[55] Similarly, Scheuermann testified that, when he asked McRae, "[W]hat the F are you doing?" McRae responded by "going on about the bodies and things like that and, you know, the decaying and

---

McRae "appears to be traumatized. Has delayed PTSD").

[51] *See also* R. Doc. No. 927-30 (suggesting that Dr. Janzen's records were available from the U.S. Pretrial Services Office, which may have required that McRae first obtain a court order authorizing their release, and from Dr. Janzen's office, which did not require such an order).

[52] R. Doc. No. 571, at 238-39, 249-57.

[53] R. Doc. No. 927-1, at 28.

[54] *E.g.*, R. Doc. No. 571, at 253-56.

[55] R. Doc. No. 572, at 195.

things like that . . . . that was roughly what he was saying."[56] Scheuermann also testified that McRae "was under a lot of stress at the time. Obviously, he was under a lot of stress and had some problems or he wouldn't have done this."[57]

Dr. Cristobal Mandry testified that he was concerned about McRae, that McRae "had sort of deteriorated to that point," and that "he was just – he was beat."[58]

McRae's mental state was the focus of both the government's and defense counsel's closing arguments, which serve as useful summaries of the evidence presented to the jury at trial.

During its closing argument, the government argued forcefully that the evidence did not support the conclusion that McRae burned the body as "a mistake" or "because he had some concern about rotting bodies."[59] The government urged, "[T]his rotting bodies nonsense is just make-believe cover to hide the truth. McRae and Scheuermann were getting rid of evidence of a police shooting."[60] The government emphasized that, while there were many dead bodies witnessed by police officers after the storm, "Only one body, Henry Glover, was burned."[61] The government reminded the jury that a photographer who was present at Habans School testified that, when he later asked McRae about what happened with the Malibu and Glover's body,

---

[56] R. Doc. No. 572, at 192.
[57] R. Doc. No. 572, at 223; *see also* R. Doc. No. 572, at 211, 240, 246, 249.
[58] R. Doc. No. 566, at 100. Dr. Mandry is a physician, board-certified in emergency medicine, who had known McRae for approximately 10 years because of Dr. Mandry's role as an NOPD reserve officer. R. Doc. No. 566, at 62, 66. Dr. Mandry "bunked" at Habans School during the relevant time period. R. Doc. No. 566, at 68-69.
[59] R. Doc. No. 576, at 61.
[60] R. Doc. No. 576, at 62.
[61] R. Doc. No. 576, at 65.

McRae "looked at me and said, NAT, and made a motion with his hand" near his neck.[62] The photographer explained that "NAT" is "cop shorthand for necessary action taken."[63]

> Defense counsel emphasized in closing argument:
>
> > Now, we know what Greg's state of mind became, we know it because Dr. Mandry testified as to how he broke down. We know that he had to admit that he broke down at nights when he was working by himself a lot, when he didn't want to do it in front of the younger men. And he told you it wasn't the only time.
> >
> > Greg McRae, a big man, a veteran of the New Orleans Police Department, crumbled on September 2nd. He absolutely crumbled. And it was that crumbled man that made the decisions that he made. But you saw him in court five years later and you now know that all of the king's horses and all of the king's men will never put him back together again. Never.[64]

Similarly, in his prior motion for acquittal and, alternatively, a new trial, which the Court denied,[65] McRae argued that he burned the vehicle "for no particular reason and as a result of the extreme stress and mental anguish resulting from the Post-Hurricane Katrina conditions under which he was working."[66]

"In determining whether to grant [a motion for a new trial], the district court must carefully weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial, but must not entirely usurp the jury's function, or simply set aside a jury's verdict because it runs counter to the result the district court believed was more appropriate." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) (internal quotations and citations omitted). "Setting aside a jury's guilty verdict in the interests of justice

---

[62] R. Doc. No. 576, at 61; *see also* R. Doc. No. 566, at 120, 128.
[63] R. Doc. No. 576, at 61; *see also* R. Doc. No. 566, at 128.
[64] R. Doc. No. 576, at 153.
[65] R. Doc. No. 476.
[66] R. Doc. No. 463, at 6.

may be appropriate under circumstances where the evidence brought forth at trial may tangentially support a guilty verdict, but in actuality, preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred." *Id.* at 672 (quotation omitted). "Although a district court has broad discretion, it is not limitless, and it 'may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.'" *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005) (quoting *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997)).

McRae has not shown that the jury probably would have acquitted him if presented with the evidence discussed above. *See United States v. Runyan*, 290 F.3d 223, 247-48 (5th Cir. 2002) (concluding that "post-trial expert analysis 'only verified'" information of which the jury was "fully aware"). In short, while Dr. Jansen's testimony or notes may have bolstered McRae's testimony, the ultimate credibility call with respect to specific intent was made by the jury on the basis of extensive evidence, including voluminous testimony from McRae himself.[67] *See United States v. Bright*, 517 F.2d 584, 586 (2d Cir. 1975); *see also Smith v. United States*, No. 91-3882, 1993 WL 206559, at *2 (7th Cir. June 14, 1993). No evidentiary hearing is required with respect to this evidence. *See Runyan*, 290 F.3d at 248.

## CONCLUSION

McRae has not demonstrated that Dr. Janzen's records are newly discovered evidence that could not have been previously detected through the exercise of due diligence. In addition, the evidence relative to online commenting, grand jury leaks, and a government cover-up is immaterial to the jury's verdict. Finally, the evidence set forth by McRae, when taken as a

---

[67] *See* R. Doc. No. 427-5, at 40 (defining "willfulness").

whole, fails to satisfy the prejudice requirement of Rule 33. McRae has not shown that the evidence described above gives rise to reasonable grounds to question the fairness of the trial or the integrity of the jury, nor has he shown that such evidence would probably result in an acquittal. The interest of justice does not require a new trial. Accordingly,

**IT IS ORDERED** that McRae's motion for a new trial and amended motion for a new trial are **DENIED.**

New Orleans, Louisiana, June 2, 2014.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**