UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                                       No. 10-154

GREGORY MCRAE                                         SECTION I

## ORDER AND REASONS

Before the Court are the objections by defendant, Gregory McRae ("McRae"),[1] and the government[2] to the pre-sentence investigation report ("PSR"). For the following reasons, the government's first objection is **SUSTAINED**, and its remaining objections are **DISMISSED AS MOOT**. Defendant's objection to the absence of a two-level decrease for acceptance of responsibility is **OVERRULED**, and his remaining objections are **DISMISSED AS MOOT**.

### I. Background

**A. Scope of the Mandate**

When the U.S. Court of Appeals for the Fifth Circuit vacated McRae's conviction for denying Henry Glover's ("Glover") descendants and survivors the right of access to courts, but affirmed the remainder of his convictions, the Fifth Circuit vacated all of McRae's sentences because it was "unsure of how the district court confected the various sentences as part of the whole." *United States v. McRae*, 702 F.3d 806, 843 (5th Cir. 2012).[3] The Court recognizes that

---

[1] R. Doc. No. 1050, at 77-81.

[2] R. Doc. No. 1050, at 35-45.

[3] A detailed background of this case can be found in the Fifth Circuit's opinion.

today's resentencing is constrained by the Fifth Circuit's mandate. As summarized by the Fifth Circuit in *United States v. Marmolejo*, 139 F.3d 528, 530-31 (5th Cir. 1998): "The only issues on remand properly before the district court are those issues arising out of the correction of the sentence ordered by this court. . . . All other issues not arising out of [the Fifth Circuit's] ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below."

Neither party has raised the fact that some of the issues in dispute go beyond the Fifth Circuit's mandate. To the extent that this order and reasons addresses issues other than the vacatur of count 5 of the second superseding indictment and the subsequent acquittal of David Warren ("Warren"), the Court states for the record that its sentence would be the same regardless of the framework under which this resentencing is analyzed. Addressing solely the issues relative to the vacated conviction and Warren's acquittal and addressing all of the various issues raised by the parties would result in the same ultimate sentence for McRae.

**B. Guidelines Framework**

Counts 4 and 6 are grouped. Since a 120-month consecutive sentence is required as to count 7, this count is excluded from the grouping rules. As to counts 4 and 6, for purposes of determining the applicable advisory guideline range, the guideline relative to count 6 is used since that guideline produces the highest offense level.

Pursuant to count 6, the jury convicted McRae of obstruction of a federal investigation in violation of 18 U.S.C. § 1519.[4] U.S.S.G. § 2J1.2 applies to the offense of obstruction of justice. Section 2J1.2(c)(1) provides for a cross reference to determine a defendant's base offense level

---

[4]*See* R. Doc. No. 223, at 4; R. Doc. No. 525, at 1.

where "the offense involved obstructing the investigation or prosecution of a criminal offense," and it directs the Court to "apply §2X3.1 (Accessory After the Fact) in respect to that criminal offense, if the resulting offense level is greater" than would otherwise be determined pursuant to § 2J1.2.

According to § 2X3.1(a)(1), a defendant's base offense level must be set at "**6** levels lower than the offense level for the underlying offense." Here, if the underlying offense is manslaughter, the base offense level pursuant to the cross reference is 29,[5] to which six levels must be added because Warren committed the act under color of law,[6] resulting in an offense level of 35, and from which six levels must be deducted pursuant to § 2X3.1(a)(1), ultimately yielding a base offense level of 29.[7]

## II. Objections by the Government

The government objects to the U.S. Probation Officer's calculation of McRae's guideline range on the basis that, because a cross reference for manslaughter applies, the total offense level for count 6 should be 29, rather than 18.[8] Although the government also raises alternative objections, the Court need not reach them because it has determined that the manslaughter cross reference applies. In making this determination, the Court has considered the government's contention that a manslaughter occurred and McRae's contention that he did not act to assist Warren. Each contention will be addressed in turn.

---

[5] *See* U.S.S.G. § 2H1.1(a)(1) (referring to offense level of underlying offense); *id.* § 2A1.3(a) (setting forth the base offense level for manslaughter).

[6] *See id.* § 2H1.1(1)(b) (setting forth a six-level increase for acts committed under color of law).

[7] *See also* R. Doc. No. 585, at 15 (original PSR).

[8] R. Doc. No. 1050, at 36-42

**A. Warren's Acquittal Is Irrelevant**

The government argues that the manslaughter cross reference applies because the evidence supports a determination by a preponderance of the evidence that Warren committed manslaughter.[9] The government also suggests that the Court should give greater weight to the first jury's verdict as to Warren, as much of the evidence in Warren's retrial was excluded "to protect Warren from suffering prejudice associated with McRae's grievous conduct."[10] McRae vehemently argues, however, that the cross reference does not apply because the government has not shown by a preponderance of the evidence that Warren committed manslaughter.[11] Both parties misapprehend the issue.

In *United States v. McQueen*, a seminal case on the subject, the Eleventh Circuit held: "The language of the cross-referencing provision is mandatory when the offense involves 'obstructing the investigation or prosecution of a criminal offense' without any qualification and without regard to whether defendant or anybody else was convicted of the underlying offense, or whether an offense could be shown to have been committed at all." 86 F.3d 180, 182 (11th Cir. 1996); *see also United States v. Brenson*, 104 F.3d 1267, 1285 (11th Cir. 1997). Although not addressed by the Fifth Circuit, this passage from *McQueen* has been cited favorably by several other circuits. *See, e.g.*, *United States v. Kimble*, 305 F.3d 480, 485-86 (6th Cir. 2002); *United States v. Arias*, 253 F.3d 453, 454 (9th Cir. 2001); *United States v. Yancey*, 155 F.3d 564 (4th Cir. 1998) (unpublished).

---

[9] R. Doc. No. 1052, at 3.

[10] R. Doc. No. 1052, at 6.

[11] R. Doc. No. 1054, at 1.

For example, in *United States v. Arias*, 253 F.3d at 454, the Ninth Circuit observed: "Other circuits . . . agree that the cross reference in § 2J1.2(c)(1) must be applied without regard to the defendant's guilt on the underlying offenses. No court of which we are aware would permit inquiry into the sufficiency of the evidence on the underlying offense whose prosecution was obstructed." (citations omitted). The Ninth Circuit further held that, "[b]ased on the plain language of § 2J1.2(c)(1), our previous treatment of the perjury guideline, and the persuasive analyses of our colleagues in other circuits, we conclude that § 2J1.2(c)(1) requires cross referencing without regard to whether the underlying offense whose prosecution was obstructed was or is provable." *Id.* at 461.

The *Arias* court further addressed the issue before the Court today. There, as here, "[t]here is no question that [defendant] obstructed justice; the only possible question is with respect to the prosecution of which offense or offenses." *Id.* In such circumstances, "[i]f in genuine dispute, the court should determine which offense or offenses were subject to the obstructed prosecution. This is a factual determination that the court may resolve by a preponderance of the evidence, but the determination goes to nexus only." *Id.*

Although the Court is not aware of Fifth Circuit authority applying this line of reasoning to cross references for obstruction of justice convictions, the Fifth Circuit has adopted a similar approach with respect to cross references for perjury convictions. *See United States v. Martinez*, 106 F.3d 620, 621 (5th Cir. 1997) (concluding that "a conviction on the underlying offense is not required"); *United States v. Salinas*, 956 F.2d 80 (5th Cir. 1992). In light of the Fifth Circuit authority with respect to perjury convictions and the persuasive authority from other circuits with respect to obstruction of justice convictions, the Court concludes that the sufficiency of the evidence

of manslaughter is not relevant to a determination of whether McRae's obstruction was relative to a manslaughter investigation.

The parties agree that the relevant offense is manslaughter,[12] that is, that a manslaughter investigation was obstructed, regardless of whether or not a manslaughter actually occurred. This issue is not in "genuine dispute." *See Arias*, 253 F.3d at 461. In any event, the Court finds that the manslaughter cross reference is proper because McRae's obstructive conduct was related to a manslaughter investigation in a "very entwined and enmeshed way." *See Martinez*, 106 F.3d at 621.

**B. A Manslaughter Occurred**

In the alternative, however, the Court finds by a preponderance of the evidence that Warren's shooting of Glover constituted manslaughter. To make this finding, the Court must determine that Warren unlawfully killed Glover; that he did so without malice, that is, upon a sudden quarrel or heat of passion; and that the killing took place within the territorial jurisdiction of the United States.[13]

The Court easily finds by a preponderance of the evidence that Warren killed Glover; indeed, this fact is essentially undisputed. For example, Warren admitted at his first trial that "I had shot at one of [the two men]. I had thought I had missed. That's what I would say. I mean, I think it's clear

---

[12]R. Doc. No. 1052, at 2; R. Doc. No. 1054, at 1. The government has not suggested that murder provides the relevant underlying offense. *See United States v. Dickerson*, 114 F.3d 464, 468 (4th Cir. 1997). Similarly, rather than arguing that manslaughter is not the relevant underlying offense, McRae challenges only whether a manslaughter in fact occurred. *E.g.*, R. Doc. No. 1054, at 1. Given that McRae admitted that he knew Glover was the victim of a homicide, this position is eminently reasonable.

[13]*See* Fifth Circuit Criminal Pattern Jury Instruction § 2.57 (2012).

that I ultimately hit him."[14] Similarly, at his second trial, Warren did not argue that he had not killed Glover.

The crucial question disputed by the parties is whether that killing was unlawful. Although a law enforcement officer may use some force if it is necessary for a legitimate law enforcement purpose, law enforcement officers may not use more force than reasonably necessary to accomplish such a purpose.[15] Whether the use of force was unreasonable or unnecessary is an issue to be determined in the light of all the surrounding circumstances.[16] Where the suspect poses no immediate threat to the office and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.[17] A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.[18]

The Court finds that, taking into account all of the circumstances, the killing of Glover was unlawful. Such a finding is not a comment on the jury's verdict in Warren's retrial. The jury found that the government had not proven its case beyond a reasonable doubt. Here, the Court is confronted with a lower, preponderance of the evidence standard.

Also, to be clear, the Court is not taking into account the subsequent obstructive acts by other co-defendants, whether McRae's acts or those alleged acts of co-defendants who were acquitted at trial, in determining whether a manslaughter occurred. Rather, the Court has taken into account those

---

[14] R. Doc. No. 570, at 169.

[15] *See* R. Doc. No. 427-5, at 24.

[16] R. Doc. No. 427-5, at 24.

[17] R. Doc. No. 427-5, at 25.

[18] R. Doc. No. 427-5, at 25.

circumstances giving rise to the shooting of Glover. As the Court previously observed at the sentencing proceeding that followed Warren's first trial:

> The court does not believe for a second that Henry Glover, an unarmed man trying to survive, not die, or for that matter his companion, Bernard Calloway, charged you in a menacing way on September 2nd, 2005. As you testified, at the time you were in uniform, you had quite loudly and clearly identified yourself as a police officer and you were armed with an assault rifle and scope that you retrieved from home.
>
> For you to suggest, that faced with such circumstances, Henry Glover decided to overtake you and cause you to fear for your life by feigning the fact that he had a weapon in his hand is farcical. Henry Glover was not at the strip mall to commit suicide. He was there to retrieve some baby clothing.[19]

Having had the further opportunity to listen to Warren's testimony at his retrial, as well as the testimony of the other witnesses, as to Warren's actions and the environment in which they occurred, the Court continues to believe that Warren gunned down Glover because Warren believed Glover was a looter.[20] The Court remains convinced that Glover posed no immediate threat to Warren or any other individual and that he was merely an unarmed, nondangerous man, whom Warren shot dead. These conclusions are supported by a preponderance of the evidence. The Court has applied this standard with excruciating care. Nonetheless, the Court has no doubt that the government has met its burden.

McRae suggests that the Court would have to impermissibly reject the second "jury's credibility choice" to make this finding.[21] This is incorrect.

---

[19] R. Doc. No. 580, at 10.

[20] R. Doc. No. 581, at 12.

[21] R. Doc. No. 1054.

First, as noted above, a lower standard applies to this sentencing determination than applied to the jury's finding as to the underlying criminal charges. Second, the Court is entitled, if not obliged,[22] to independently consider the credibility of the witnesses, including their demeanor, in making its determination by a preponderance of the evidence. *E.g.*, *United States v. Goncalves*, 613 F.3d 601, 609 (5th Cir. 2010). More specifically, acquitted conduct may be considered pursuant to the sentencing process, *United States v. Casares*, 110 F.3d 793 (5th Cir. 1997) (unpublished), even where such an acquittal arguably suggests that the jury made a contrary credibility finding pursuant to its heightened standard of proof, *United States v. Otto*, 64 F.3d 367, 371 (8th Cir. 1995).

Finally, as to the heat of passion issue, this element serves to distinguish manslaughter from murder.[23] The government does not ask that the Court revisit the first jury's verdict with respect to this element, and the Court will not do so. Similarly, there is no dispute that the territorial jurisdiction element is met here.

In sum, based on the evidence related to Warren's shooting of Glover, the Court finds by a preponderance of the evidence that a manslaughter occurred, and this finding provides an alternative basis for applying the manslaughter cross reference.

**C. McRae Need Not Be an Accessory After the Fact**

---

[22] *See United States v. Guild*, 341 F. App'x 879, 889 (4th Cir. 2009) ("The jury's verdict does not necessarily suggest that Nathan's testimony was not credible. Rather, it reflects the jury's inability to find Guild's guilt beyond a reasonable doubt. Moreover, as we have explained, the court was not bound by the jury's conclusions as to Nathan's credibility. The court was obliged to make its own findings by a preponderance of the evidence. It did just that.").

[23] Heat of passion means "a passion of fear or rage in which the defendant loses his normal self-control as a result of circumstances that would provoke such a passion in an ordinary person, but which did not justify the use of deadly force." *See* R. Doc. No. 427-5, at 34; *Lizama v. U.S. Parole Comm'n*, 245 F.3d 503, 506 (5th Cir. 2001).

McRae separately argues that the cross reference only applies where the defendant engaged in the obstruction for the purpose of avoiding punishment himself or, "as the government would have it in McRae's case, to help a fellow police officer escape punishment for an unjustified shooting."[24] McRae appears to interpret the guidelines commentary to suggest that he must be acting as an accessory after the fact for the cross reference to apply. *See* 18 U.S.C. § 3 ("Whoever . . . assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.").

As McRae notes, the commentary to § 2J1.2 provides: "Because the conduct covered by this guideline is frequently part of an effort to avoid punishment for an offense that the defendant has committed or to assist another person to escape punishment for an offense, a cross reference to § 2X3.1 (Accessory After the Fact) is provided." Based on this commentary, McRae argues that the Court "cannot apply the cross reference unless it finds by a preponderance of the evidence that McRae burned Glover's body to protect a fellow police officer."[25]

McRae appears to confuse the purpose of the cross reference. Of note, his quotation leaves out the subsequent sentence in the commentary: "Use of this cross reference will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense was committed by the defendant or another person." This sentence is a critical part of the commentary.

As the Eighth Circuit has observed:

---

[24]R. Doc. No. 1054, at 4.

[25]R. Doc. No. 1054, at 4.

> "While § 2X3.1 ordinarily applies to convictions for acting as an accessory after the fact, it also serves as a tool for calculating the base offense level for particularly serious obstruction offenses. . . . The guidelines base [defendant's] sentence upon the acts he took in 'obstructing the investigation or prosecution of a criminal offense,' and not upon criminal liability of acting as an accessory after the fact . . . . The cross reference merely provides flexibility within the provisions of § 2J1.2 so that the guideline may apply to both less and more serious forms of obstruction."

*United States v. Russell*, 234 F.3d 404, 410 (8th Cir. 2000) (citations omitted). Thus, § 2X3.1 is intended "to weigh the severity of one's actions in obstructing justice based on the severity of the underlying offense." *Brenson*, 104 F.3d at 1285; *see also Kimble*, 305 F.3d at 485-86; *Arias*, 253 F.3d at 461.

The guidelines "merely borrow the formula in § 2X3.1 to treat a defendant who has [obstructed justice] in relation to a criminal offense as if he was convicted of being an accessory." *Martinez*, 106 F.3d at 621 (discussing perjury); *see also Salinas*, 956 F.2d at 83 (concluding that the "district court was correct, therefore, in applying § 2X3.1(a) for perjury relating to a criminal offense" namely, murder, notwithstanding the fact that the defendant "was not implicated in the murder as a principal or accessory after the fact"). Here, the cross reference serves to increase McRae's guidelines in light of the seriousness of the crime that he obstructed, regardless of whether he did so as an accessory after the fact.

### D. Conclusion

The manslaughter cross reference gives rise to a base offense level of 29. In conjunction with McRae's criminal history category of I, this yields a guidelines range of 87-108 months' imprisonment as to each of counts 4 and 6, which are grouped.

## II. Objections By McRae

McRae objects to paragraphs 44-47 on the basis that the description of how Sergeant Simmons' report was generated is not sufficiently reliable or, alternatively, on the basis that these paragraphs should specify a source for the information contained therein.[26] The Court need not rule on this objection because such information will not be considered for sentencing purposes.[27]

McRae objects to paragraph 57 on the basis that its characterization of Travis McCabe's conduct lacks sufficient indicia of reliability.[28] The Court need not rule on this objection because such information will not be considered for sentencing purposes.

McRae objects to paragraph 61 on the basis that, in light of his acquittal, Warren is not responsible for Glover's funeral expenses.[29] The Court need not rule on this objection because such information will not be considered for sentencing purposes.

McRae objects to paragraph 62 on the basis that William Tanner's ("Tanner") assertion of lost wages requires corroboration.[30] The Court need not rule on the information because it will not be considered for sentencing purposes. As at McRae's original sentencing, the Court will only order $6,000 in restitution, which reflects the value of Tanner's vehicle as set forth by Tanner and the 2005 Edmunds Used Cars and Trucks Buyer's Guide, and to which McRae has not objected.[31]

---

[26] R. Doc. No. 1050, at 7.

[27] See Fed. R. Crim. P. 32(i)(3)(B).

[28] R. Doc. No. 1050, at 7.

[29] R. Doc. No. 1050, at 7-8.

[30] R. Doc. No. 1050, at 7-8.

[31] R. Doc. No. 1050, at 15.

McRae objects to paragraphs 66 and 77, arguing that he is entitled to a two-level decrease for acceptance of responsibility.[32] The Court agrees with U.S. Probation that, while McRae expressed remorse for his actions, he proceeded to trial based on a defense that denied an essential factual element of guilt, that is, the requisite intent.[33] As at McRae's prior sentencing, the Court concludes that a decrease for acceptance of responsibility is unwarranted.

McRae objects[34] to the recommendation for an upward variance in paragraph 134 and, relatedly, has filed a motion requesting a downward variance. As U.S. Probation observes, presentation of information in this section does not necessarily constitute a recommendation for a variance. In any event, the Court will not be imposing an upward variance, and this objection is moot.

**III. Conclusion**

The manslaughter cross reference gives rise to a base offense level of 29. In conjunction with McRae's criminal history category of I, this yields a guidelines range of 87-108 months' imprisonment as to as to each of counts 4 and 6, which are grouped. The Court finds that McRae is not entitled to a two-level decrease for acceptance of responsibility. Accordingly,

**IT IS ORDERED** that the government's first objection is **SUSTAINED**.

**IT IS FURTHER ORDERED** that the government's remaining objections are **DISMISSED AS MOOT**.

---

[32] R. Doc. No. 1050, at 78-80.

[33] R. Doc. No. 1050, at 33.

[34] R. Doc. No. 1050, at 81.

**IT IS FURTHER ORDERED** that McRae's objection relative to acceptance of responsibility is **OVERRULED**.

**IT IS FURTHER ORDERED** that McRae's remaining objections are **DISMISSED AS MOOT**.

New Orleans, Louisiana, August 15, 2014.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE