UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 10-154** |
| **GREGORY MCRAE** | **SECTION I** |

## ORDER AND REASONS

Before the Court is the government's objection to the fifth addendum to the pre-sentence investigation report ("PSR") prepared by the U.S. probation office. The government originally filed this objection to the fourth addendum, but then renewed its protest after the probation office rejected the government's objection in the fifth addendum. The objection centers on the appropriate base offense level for defendant, Gregory McRae's ("McRae"), conviction on count 4 of the second superseding indictment for the unreasonable seizure of William Tanner's 2001 Chevrolet Malibu in violation of 18 U.S.C. § 242. The probation office and McRae argue that the appropriate guideline is U.S.S.G. § 2H1.1(a)(3). The government contends that the appropriate guideline is U.S.S.G. § 2H1.1(a)(1). For the following reasons, the Court holds that the probation office and McRae are correct.

The Court assumes familiarity with the factual and procedural background of this case. As the government's objection presents only an issue of law, however, little or no background is necessary to the Court's analysis.

## LAW AND ANALYSIS

### I. The basis for the government's objection

Both parties and the probation office agree that U.S.S.G. § 2H1.1 is the applicable guideline provision with respect to Count 4. They dispute the applicable subsection. U.S.S.G. § 2H1.1 provides in its entirety:

>   (a) Base Offense Level (Apply the Greatest):
>
>   (1) the offense level from the offense guideline applicable to any underlying offense;
>
>   (2) 12, if the offense involved two or more participants;
>
>   (3) 10, if the offense involved (A) the use or threat of force against a person; or (B) property damage or the threat of property damage; or
>
>   (4) 6, otherwise.
>
>   (b) Specific Offense Characteristics
>
>   (1) If (A) the defendant was a public official at the time of the offense; or (B) the offense was committed under color of law, increase by 6 levels.

With respect to subsection (a)(1), the application notes explain that the "'offense guideline applicable to any underlying offense' means the offense guideline applicable to any conduct established by the offense of conviction that constitutes an offense under federal, state, or local law . . . ." Case law is clear that the defendant need not have been convicted of that underlying offense for its guideline to be used. *United States v. Causey*, 185 F.3d 407 (5th Cir. 1999) (first degree murder was offense underlying civil rights violations).

The parties do not dispute that the only potentially applicable subsections in U.S.S.G. § 2H1.1(a) are (a)(1) and (a)(3). The parties also do not dispute, with respect to subsection (a)(1), that the only potentially applicable "underlying offense" is arson, the applicable guideline being

2

U.S.S.G. § 2K1.4.[1]  In order for the arson guideline to provide the greatest base offense level—and hence to be applicable pursuant to U.S.S.G. § 2H1.1—the arson guideline must provide a base offense level greater than 10, which is the base offense level provided for by subsection (a)(3).

U.S.S.G. § 2K1.4(a) provides, in its entirety:

(a) Base Offense Level (Apply the Greatest):

(1) 24, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly; or (B) involved the destruction or attempted destruction of a dwelling, an airport, an aircraft, a mass transportation facility, a mass transportation vehicle, a maritime facility, a vessel, or a vessel's cargo, a public transportation system, a state or government facility, an infrastructure facility, or a place of public use;

(2) 20, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense; (B) involved the destruction or attempted destruction of a structure other than (i) a dwelling, or (ii) an airport, an aircraft, a mass transportation facility, a mass transportation vehicle, a maritime facility, a vessel, or a vessel's cargo, a public transportation system, a state or government facility, an infrastructure facility, or a place of public use; or (C) endangered (i) a dwelling, (ii) a structure other than a dwelling, or (iii) an airport, an aircraft, a mass transportation facility, a mass transportation vehicle, a maritime facility, a vessel, or a vessel's cargo, a public transportation system, a state or government facility, an infrastructure facility, or a place of public use;

(3) 16, if the offense involved the destruction of or tampering with aids to maritime navigation; or

(4) 2 plus the offense level from § 2B1.1 (Theft, Property Destruction, and Fraud).

---

[1] The government's objection states that "[t]he probation officer disagrees that the underlying offense is arson, and suggests that the underlying offense should be use of fire to commit a felony" as charged in count 7.  The government mischaracterizes the probation office's position.  As the probation office makes clear in the fifth addendum to the PSR, its position is not that arson is the incorrect underlying offense, but rather that the only subsection of the arson guideline that is applicable under "the facts present in the instant offense" is subsection (a)(4), which calculates an offense level based on the lost value of the object burned.  Because, under these facts, subsection (a)(4) results in a lower offense level calculation than subsection (a)(3) of U.S.S.G. § 2H1.1, the probation office concludes that subsection (a)(3) must apply.

In order for U.S.S.G. § 2K1.4(a) to provide a base offense level greater than 10—the base offense level provided for by U.S.S.G. § 2H1.1(a)(3)—either subsection (a)(1) or subsection (a)(2) must apply.[2]  No party argues that subsection (a)(1) applies, and that is clearly correct.  The issue before the Court is whether subsection (a)(2) applies.

Because the target of McRae's arson, a personal vehicle, is not explicitly listed in subsection (a)(2), the applicability of that section turns on whether a personal vehicle can be considered "a structure other than" all of the items specifically listed in subsection (a)(2).  The probation office and McRae argue that a personal vehicle should not be considered "a structure," and subsection (a)(2) is, therefore, not applicable.  The government disagrees.

## II.   The reasons why the government's objection is denied

Both parties and the probation office represent that they have found no case law addressing this issue.  Neither has the Court's research uncovered any relevant authority.  In the absence of binding or persuasive authority, the parties turn first to the language of the guideline itself in order to resolve its meaning.  The U.S. Fifth Circuit Court of Appeals has explained that "[w]e apply ordinary rules of statutory construction to the Sentencing Guidelines, and if the language of the Guidelines is unambiguous the inquiry ends with the plain meaning of that language." *United States v. Rabanal*, 508 F.3d 741, 743 (5th Cir. 2007).  "The plain meaning controls unless it leads to an absurd result." *Id.*

---

[2] Subsection (a)(3) would also provide a base offense level greater than 10, but no party argues that it is applicable under these facts.  Subsection (a)(4), the catch-all provision for the arson guideline, would be applicable to McRae, however that subsection would not yield a base offense level greater than the 10 provided by U.S.S.G. § 2H1.1(a)(3).  Because U.S.S.G. § 2H1.1(a) directs the Court to "apply the greatest" applicable offense level, subsection (a)(4) of the arson guideline should not be used.

The Court finds ambiguity with respect to whether a "vehicle" is a type of "structure," as that word is commonly used.  Black's Law Dictionary, cited by the government in its objection, defines "structure" as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together <a building is a structure>." (10th Ed. 2014).  Merriam-Webster Dictionary, cited by McRae, defines "structure" as "something (such as a house, tower, bridge, etc.) that is built by putting parts together and that usually stands on its own," or "something (as a building) that is constructed."  Merriam—Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/structure (last visited February 2, 2016).  None of these definitions explicitly include or exclude a vehicle, although the Court notes that McRae is correct in observing that the examples used are all immovables.

The Fifth Circuit has explained that "[i]n determining the meaning of [a] statute, [courts] look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy."  *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008).  The design of U.S.S.G. § 2K1.4(a), and its history, demonstrate that the sentencing commission did not intend for a personal vehicle to be considered "a structure other than" the items enumerated in subsection (a)(2).

In 1990, U.S.S.G. § 2K1.4(a)(1) and (a)(2) read as follows:

(a) Base Offense Level (Apply the Greatest):

(1) 24, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly; or (B) involved the destruction or attempted destruction of a dwelling;

(2) 20, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense; (B) involved the destruction or attempted destruction of a structure other than a dwelling; or (C) endangered a dwelling, or a structure other than a dwelling;

5

Fed. Sent. L. & Prac. § 2K1.4.

The offenses in subsection (a)(2) were simply defined by what they were not: offenses not meeting the requirements of subsection (a)(1).  As McRae points out, courts during this period interpreted "a structure other than a dwelling" to refer to buildings that were not "dwellings."  *See United States v. Anderson*, 235 F.3d 1339 (5th Cir. 2000) (recognizing that a nightclub is "a structure other than a dwelling); *United States v. Pazos*, 24 F.3d 660, 666 (5th Cir. 1994)(affirming a sentencing determination because a restaurant is "a structure other than a dwelling"); *United States v. Beardslee*, 197 F.3d 378, 387 (9th Cir. 1999) (classifying a warehouse as "a structure other than a dwelling"); *See also United States v. Foutris*, 966 F.2d 1158, 1164 (7th Cir. 1992) (Easterbrook, J., concurring) (asking, in a discussion of the different dangers posed by arson of a dwelling versus arson of "a structure other than a dwelling" under U.S.S.G. § 2K1.4, "how dangerous is arson of a building known to be unoccupied" compared to a building known to be occupied?).

As McRae notes in his brief, in 2001 Congress passed the USA PATRIOT Act ("PATRIOT Act"), Pub. L. No. 107-56, 115 Stat. 374 (Oct. 26, 2001), as a result of the attacks on the World Trade Center.  That Act, now codified at 18 U.S.C. § 1992, criminalized terrorist attacks against railroad carriers and mass transportation systems, including mass transportation vehicles.  *See* Pub. L. No. 107-56, Title VIII, § 801.  To conform to the PATRIOT Act, the sentencing commission amended U.S.S.G. § 2K1.4(a)(1) to include airports, aircrafts, mass transportation facilities, mass transportation vehicles, and ferries.  *See* App. C. Vol. II, Amend. 637 (Nov. 2002), Reason for Amendment.  Subsection (a)(2) was similarly amended to exclude the specific categories listed in

subsection (a)(1).  Subsection (a)(2) hence applied only to "a structure other than" the categories of items added to subsection (a)(1).[3]

The described amendment process makes clear that even though U.S.S.G. § 2K1.4(a)(2) uses the word "structure," it is not meant to include all objects which might possibly fall under the definition of that term.  Rather, the use of the word originates with an earlier version of § 2K1.4 which singled out only two potential objects of the arson: a "dwelling" or "a structure other than" a dwelling.  The case law interpreting this earlier version of § 2K1.4 supports the view that "a structure other than a dwelling" referred to categories of buildings other than dwellings.

When subsection (a)(1) was amended to its present form to conform with the PATRIOT Act, the sentencing commission retained the phrase "a structure other than" in subsection (a)(2) and appended "an airport, an aircraft, a mass transportation facility," etc. after "a dwelling."  There is no reason to believe that such additions broadened the scope of the word "structure."  And while the meaning of "structure" appears broader when that word is juxtaposed with an airport, an aircraft, a mass transportation vehicle, and a vessel, the Court cannot ignore the fact that "structure" originally appeared opposite only the word "dwelling."  Viewed in that context, it is unlikely that the guidelines intend for a personal vehicle to be a "structure" under subsection (a)(2).  Indeed, as McRae argues in his brief, the government's reading of the guideline would lead to anomalous results.

---

[3] In 2003, following a PATRIOT Act amendment, the guideline was broadened again to include specific references to offenses involving a public transportation system, a state or government facility, an infrastructure facility, or place of public use.  *See* App. C. Vol. II, Amend. 655 (Nov. 2003), Reason for Amendment.  In 2011, "ferries" were deleted and "a maritime facility, a vessel or a vessel's cargo" were also added.  *See* App. C., Vol. III, Amendments 699 and 700 (Nov. 2012).

For these reasons, it is clear that the 2001 Chevrolet Malibu unlawfully burned by McRae is not a "structure" within the meaning of U.S.S.G. § 2K1.4(a)(2). Because that is the case, subsection (a)(3) of U.S.S.G. § 2H1.1 provides the greatest base offense level applicable to McRae.[4]

## CONCLUSION

For the reasons offered above, the government's objection to the fifth addendum to the PSR is **DENIED**.

New Orleans, Louisiana, February 4, 2016.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[4] The base offense level provided by U.S.S.G. § 2H1.1(a)(3) is 10. Because McRae's offense was performed under color of law, however, a six-level increase is applicable pursuant to U.S.S.G. § 2H1.1(b)(1)(B). As there are no other necessary adjustments, the probation office concluded that McRae's total offense level is a 16. This Court agrees with that assessment.